UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JAMES DUNSHIE,                                        **REPORT AND**
                                                                           **RECOMMENDATION**

                               Plaintiff,

                                                                           09-CV-00070(A)(M)

v.

DICK'S SPORTING GOODS,
EBSCO INDUSTRIES, INC.,
PLASTICS RESEARCH DEVELOPMENT CORP.,
and SUMMIT TREESTANDS, LLC,

                               Defendants.
_____

         Before me is defendants' motion for summary judgment [50].[1]  That motion, being dispositive, has been referred to me by Hon. Richard J. Arcara for preparation of a Report and Recommendation [6]. Oral argument was held on October 24, 2011 [63].  For the following reasons, I recommend that the motion be granted.

**BACKGROUND**

         Plaintiff commenced this action on October 16, 2008 [1], seeking to recover for personal injuries sustained while hunting on October 20, 2005, due to the collapse of a "Bushmaster XLS Climbing Treestand" manufactured by defendant Summit Treestands, LLC ("Summit"). Plaintiff alleges various causes of action, including negligence, breach of warranty, and strict liability in tort.

---

[1]      Bracketed references are to CM/ECF docket entries.

A climbing treestand is a device utilized by hunters for climbing up and sitting in a tree while hunting. It consists of a climber/seat, a separate lower platform attached to the hunter's feet, a safety harness and a safety line, and is accompanied by written and videotape instructions and warnings concerning its proper use. Defendants' Statement of Material Facts [50-3], ¶2. The method of operation is described as follows:

> "After selecting a safe tree, the hunter attaches the lower platform, the climber/seat portion and the harness to the tree. Ensuring that the full-body harness is secured to the tree, the hunter then climbs upon the platform and secures [his] feet to the tightened straps attached to the platform. Placing the weight upon the platform, the hunter then tilts the climber/seat portion of the treestand, disengaging it from the tree, and moving it up. Upon reaching a comfortable level, the hunter then loads the upper, climber/seat portion of the treestand, with the weight suspended upon the elbows, and by tilting and lifting [his] feet, moves the lower platform portion of the treestand higher in the tree. The user then reattaches the platform by merely placing weight upon it. The user climbs by placing body weight on each alternating portion of the treestand, thereby loading the portion of the treestand and allowing it to carry weight. The hunter then alternates moving the lower and upper climbing portions of the treestand to 'inch' [his] way up the tree. On each step, the hunter also slides the full-body harness up so that the tree may be climbed without ever having to remove the full-body safety harness from the tree." Defendants' Statement of Material Facts [50-3], ¶3.

Plaintiff has given conflicting versions of exactly how his accident occurred. For example, whereas he told responders at the accident scene that his "safety harness . . . came unattached" (Investigative Memorandum [50-10]), at his deposition plaintiff testified that the harness had not been connected ([50-8], pp.112, 117). Plaintiff told responders to the accident scene that after the treestand platform collapsed, he "then tried to shimmy down the tree" (Investigative Memorandum [50-10]; defendants' Statement of Material Facts [50-3], ¶19);

however, when asked at his deposition whether he took "any steps to try to ease yourself down to the ground", he replied "[t]here was no time"([50-8], p.132). "The platform dropped. A split second. I realized what happened, and then I was on the ground" (id., p.130).

In his Answers to Interrogatories ([50-9], ¶9), plaintiff stated that "[w]hile in the process of descending, the cable released from the lower or foot part of the tree stand and as the Plaintiff's weight came down on the upper part of the tree stand, the upper part of the tree stand cracked and the plaintiff fell to the ground." His attorney repeats that version of events in his Affirmation in opposition to this motion ([56], ¶16): "As he descended, the foot platform fell away, suddenly, *causing* Mr. Dunshie to place all of his weight on the upper platform or seat platform. As he did so, Mr. Dunshie fell to the ground and fractured his ankles, among other injuries" (emphasis added).

However, at his deposition plaintiff testified that the collapse of the foot platform did *not* cause him to place all of his weight on the upper (seat) platform, because his entire weight was *already* on the upper platform by the time the foot platform collapsed:

> Q. "When the platform gave way, was this during the process of easing your weight onto it?
>
> A. No, I don't believe it was.
>
> Q. So it was at a point in time that you had already placed your weight onto it; is that right?
>
> A. No.
>
> Q. It was before you placed your weight on it?
>
> A. Yes." ([50-8], p.121).

* * *

> Q. "Do you have any recollection of what the orientation of your body was when this occurred?
>
> A. I believe so . . . . When I was descending, my weight was on the top part of the climber." (Id., p.122).

In support of their motion, defendants submit the affidavits two experts (Lorne Smith, Jr. [50-11] and George M. Saunders, Jr. [50-12]), both of whom examined the treestand and conclude that it was not defective and did not cause the accident ([50-11], ¶8; [50-12], ¶14). Mr. Smith, a hunting safety instructor, notes that based on his experience with the product, a release of the cable from the foot platform (as is claimed to have occurred by plaintiff, although he did not witness it) "cannot occur during normal use" ([50–11], ¶10). He points out that although plaintiff claims to have landed on the foot platform as he hit the ground, "[t]here is no damage to that foot platform. My experience in investigating hunting accidents for over 25 years demonstrates that such an event always results in physical damage to the platform"(id., ¶11).

He further notes that "[t]he seat platform is bent outwards in a manner that only could have occurred by a dynamic or 'shock' load to the side and down of the left stand arm. This damage could not have happened under normal use of the treestand" (id., ¶12). He points out that "[i]t is illogical that this accident could have happened as Mr. Dunshie described. Several actions had to happen at the same time for this to occur. First, the cable had to come out of the cable bracket by moving both forward and upwards. The stand had to slip both off the climbing strap for his feet and the bungee cord at the same time, breaking the tether which was

holding it tied to the seat at the same time. The metal of the stand would have to give way with less weight than it had been holding. None off these are plausible" (id., ¶13).

Mr. Saunders, an engineer, concurs in Mr. Smith's conclusions. "The damage observed on the seat frame could not have occurred during normal use. The damage was consistent with a dynamic overload event (i.e. someone falling onto the seat frame) . . . . Visual inspection of the seat frame ruled out manufacturing defect or material defect that could be related to the cause of the observed damage" ([50–12], ¶12). "Inspection of both the foot platform and seat frame did not reveal any indication of a manufacturing defect. The observed damage to the seat frame was related directly to a dynamic overload, resulting from stresses well beyond what would be expected during normal foreseeable use of the treestand. The distortion at the three fracture sites . . .were consistent with an overstress event . . . . [The] treestand being utilized by Mr. Dunshie at the time of his incident was not defective in any way and did not cause Mr. Dunshie's incident." (Id., ¶14).

Although plaintiff alleges in general terms that the treestand was defective, he does not directly challenge the affidavits offered by defendants' experts, nor does he offer expert testimony to the contrary.

## ANALYSIS

A.  **Summary Judgment Standard**

"Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists. In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant[.] Summary judgment is improper if there is any evidence in the record that could reasonably support the jury's verdict for the non-moving party.' " Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003).

While the moving party must demonstrate the absence of any genuine factual dispute, the party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is *a genuine issue for trial*." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (emphasis in original). "An issue is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party . . . . The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff." Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 104 (2d Cir. 2011) (*quoting* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)) (emphasis in original). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50.

**B.    Is There a Genuine Dispute as to Material Facts?**

In his Answers to Interrogatories [50-9], plaintiff alleges that the treestand was defective in two ways: first, that "it failed to have an adequately secured cover/locking

mechanism for the cable which provided part of the support for the tree stand", and secondly, that "it was not designed in such a way that the Plaintiff's weight could be sustained in the event that the lower portion of the tree stand gave way". Id., ¶17.

In opposing the motion for summary judgment, plaintiff focuses exclusively on the first alleged defect, and makes no mention of the second. He contends that Summit "placed in commerce a product with a key safety component that could inadvertently or unintentionally open, rendering it ineffective while ascending or descending a tree . . . . [T]he product was defective in its design because the defendant knew that hatch cover could open and that once open, the cable could come loose, causing the platform to fall." Plaintiff's Memorandum of Law [56-16], pp.4-5. His attorney theorizes that "the foot platform fell away . . . *causing* [plaintiff] to place all of his weight on the upper platform or seat platform" (Rimmler Affirmation [56], ¶16), and argues that plaintiff "did not know that the cable could become . . . detached from the platform, thus *causing* him to fall" (id., ¶22) (emphasis added).

However, that theory is contradicted by plaintiff's deposition testimony, which controls for purposes of this motion. Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 104 (2d Cir. 2010) ("a party cannot create an issue of fact by submitting an affidavit in opposition to summary judgment that contradicts prior deposition testimony"); Dean v. City of Buffalo, 579 F. Supp.2d 391, 408 (W.D.N.Y. 2008) (Payson, M.J.) ("Unsupported factual assertions made only in attorney's affidavits or memoranda do not suffice to raise triable issues of fact"). As previously noted, at his deposition plaintiff clearly and repeatedly stated that *no* portion of his weight was supported by the foot platform at the time it collapsed, and that his weight was entirely supported by the upper (seat) portion.

Therefore, even assuming (for present purposes only) that there is an issue of fact as to whether the collapse of the foot platform was due to a design defect, in order to defeat summary judgment this must be a *material* issue of fact. "[T]he mere existence of factual issues - where those issues are not material to the claims before the court - will not suffice to defeat a motion for summary judgment." Quarles v. General Motors Corp. (Motors Holding Division), 758 F.2d 839, 840 (2d Cir.1985). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248.

Under New York law, "[a] party injured as a result of a defective product may seek relief against the product manufacturer or others in the distribution chain if the defect was a substantial factor in causing the injury." Speller v. Sears, Roebuck and Co., 100 N.Y.2d 38, 41 (2003). Here, plaintiff fails to explain how the collapse of the foot platform - even if due to a defect in the hatch cover for the cable or defendants' failure to warn of that defect - could have been a substantial factor in causing his injuries when he was not even standing on that platform when it collapsed. Therefore, summary judgment as to that claimed defect (and the failure to warn thereof) is appropriate. *See* Alaimo v. 3M Co., 306 Fed. Appx. 704, 705 (2d Cir. 2009) (affirming the grant of summary judgment to defendants where plaintiff's evidence "did not establish any causal link between the allegedly defective [product] and the injury to [plaintiff]").

Plaintiff's alternative defect theory is that the treestand was not designed so as to hold plaintiff's weight if the foot platform gave way. However, he testified at his deposition that in the four years of using the treestand prior to the accident, he never experienced a problem with

the upper portion bearing his weight ([50-8], p.129), and admitted that once the lower platform fell away, the upper platform would be carrying *less* weight than before (id., p.149).

Based upon their inspection of the upper portion of the treestand, defendants' experts both concluded that it had been subjected to extraordinary stress levels that would not occur in normal usage, and that it was not defective. The burden then shifted to plaintiff to submit concrete evidence of a defect. "In a products liability case, if a defendant comes forward with any evidence that the accident was not necessarily attributable to a defect, the plaintiff must then produce direct evidence of a defect to defeat the motion." Rabon-Willimack v. Robert Mondavi Corp., 73 A.D.3d 1007, 1008 (2d Dept. 2010); Minda v. Biomet, Inc., 1998 WL 817690, *6 (E.D.N.Y. 1998) ("At this stage in the case, the plaintiff cannot rely solely on circumstantial evidence, but must produce direct evidence of a defect"). Since plaintiff has failed to submit direct evidence of a defect in the upper portion of the treestand, summary judgment as to this claim is likewise warranted.

There is an additional reason for granting summary judgment: not only are plaintiff's versions of the accident inconsistent, but as noted by defendants, they are extremely implausible (Smith Affidavit [50-11], ¶13). For example, plaintiff offers no rational explanation for how the foot platform could have fallen to the ground when, according to his testimony, it was attached to his feet by elastic webbing and a cinch strap ([50-8], pp.111, 131) and was tied to the upper (seat) portion by a knotted nylon rope (id., p.128); nor does he offer a rational explanation for why foot portion of the treestand was not damaged after he landed on it with both feet from a height of 15 - 20 feet.

"[I]f the factual context renders respondents' claim implausible . . . respondents must come forward with more persuasive evidence to support their claim than would otherwise be necessary." Matsushita at 587. "[W]e do not suggest that district courts should routinely engage in searching, skeptical analyses of parties' testimony in opposition to summary judgment . . . . However, in certain extraordinary cases, where the facts alleged are so contradictory that doubt is cast upon their plausibility, the court may pierce the veil of the complaint's factual allegations and dismiss the claim . . . . To hold otherwise . . . would license the mendacious to seek windfalls in the litigation lottery." Rojas, 660 F.3d at 106.

"At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts . . . . When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris 550 U.S. 372, 380 (2007). "Our obligation to draw all reasonable inferences in favor of plaintiffs does not mean we must credit a version of the facts that is belied by the record." Tabbaa v. Chertoff, 509 F.3d 89, 93 n.1 (2d Cir. 2007). "Testimony that defies the laws of nature . . . or that is contradicted by unassailable physical evidence, could not support a verdict at trial, so cannot survive a summary judgment motion." Henson v. Thezan, 698 F.Supp. 150, 152 (N.D.Ill.1988).[2]

---

[2] Defendants also argue that plaintiff's failure to wear a safety harness constitutes an unforeseeable misuse of the product which bars his claims as a matter of law. Defendants' Memorandum of Law [50-1], pp.12-14. Since I am recommending that the motion be granted on other grounds, I need not formally address that argument. However, "it has repeatedly been recognized that a plaintiff's failure to use a safety harness is not necessarily 'unforeseeable' as a matter of law". Fuller v. Summit Treestands, LLC, 2009 WL 1874058 *4 (W.D.N.Y. 2009) (McCarthy, M.J.), adopted, 2009 WL 1874057 (W.D.N.Y. 2009) (Arcara, J.).

## CONCLUSION

For these reasons, I recommend that defendants' motion for summary judgment [50] be granted. Unless otherwise ordered by Judge Arcara, any objections to this Report and Recommendation must be filed with the clerk of this court by January 23, 2012 (applying the time frames set forth in Rules 6(a)(1)(C), 6(d), and 72(b)(2)). Any requests for extension of this deadline must be made to Judge Arcara. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

DATED:	January 6, 2012

                                /s/ Jeremiah J. McCarthy
                                JEREMIAH J. MCCARTHY
                                United States Magistrate Judge